## INHABITANTS OF THE CITY OF TRENTON

*v.*

## JOHN McQUADE.

1. A city has power to make changes in the grade of its streets; the fact that it has once graded the streets does not exhaust such power.

2. A preliminary injunction will lie to restrain a lot-owner from tearing up a sidewalk and curbing in front of his lot, rendered necessary by a change of

grade in the street, though he was not first allowed compensation for any injuries caused thereby, where he had ample notice of the beginning, progress and completion of the work, and availed himself of none of his legal remedies, and where the tearing up of the curbing and sidewalk may result in injuries to pedestrians for which the city may be liable.

On order to show cause &c.

*Mr. Edwin R. Walker*, for the complainants.

*Mr. William M. Lanning*, for the defendant.

BIRD, V. C.

The bill in this case shows that the common council of the city of Trenton and the Pennsylvania Railroad Company entered into an agreement by which certain streets were to be altered and other improvements made for the benefit and convenience of the inhabitants of the city or of the company. The common council of the city passed an ordinance to change the grade of a portion of Lamberton and Ferry streets and to widen Bridge street, between Union and Warren streets, also to vacate a portion of Bridge street, which ordinance was duly approved on February 21st, 1891. The said ordinance was passed by the procurement of said company, upon the express provision that the said company should at its own expense lay out, grade, curb, pave and dedicate a new street thirty feet wide, between Warren and Fair streets, and should widen Bridge street, between Union and Warren streets, and should dedicate the part so widened to the city of Trenton and should provide means to carry off all the surface water, whose then present course would be diverted or changed by the aforesaid alterations and changes in said streets, and the said company agreed to indemnify the said city against any losses which might be incurred to property affected or by the said changes of grade. All the said changes of grade so contemplated were made and effected by the company, except, according to the insistment of the defendant, the successful carrying off of all surplus water.

The defendant, John McQuade, owns a lot on said Ferry street, on which is his dwelling-house, opposite to which the

grade was changed in making the said improvements, and chiefly in completing a convenient embankment in making an access to a bridge over the railroad. After such changes and improvements had been made and completed, and after means had been provided for carrying off all surface water (this being denied by the defendant), whose then present course was diverted or changed by the aforesaid alterations in said streets, the city authorities directed the street to be relaid and recurbed in front of said McQuade's dwelling, which was done. While the city authorities were employed in making the said prescribed changes, McQuade interfered and molested them, and after the said pavement was relaid and the said curbing reset, according to the prescribed grade, McQuade deliberately tore up, destroyed and removed the said pavement and the said curbing, so that the said pavement was and is in a very bad condition. From his conduct and declarations it is not only manifest that he intends to continue resisting the city authorities, but again to undo and destroy whatever they may undertake to do or accomplish in perfecting the improvements and changes in the street opposite his dwelling. Hence an injunction has been asked for to restrain him from further interference with the authorities.

The defendant, by his answer, admits the making of all said improvements, and it appears that they were all made in strict compliance with the said ordinance and the undertaking and promise of the said company. But the defendant insists that such changes and alleged improvements have so diverted the water and increased the flow as to cause damage to his said lot and premises.

The excuse of the defendant for his violent interference with the city authorities and for his disturbance and destruction of the improvements which it made is that, owning the said premises prior to the making of said changes and alleged improvements on behalf of the city, he erected his dwelling-house thereon and made other improvements in accordance with the grades of the streets of the said city as they had then been fixed or determined upon by the city authorities, and that the grade so fixed carried the water from his premises; that in making

such changes and improvements the company constructed an elevated bridge for the use of the inhabitants of the city, and that said bridge might be accessible, it was necessary to build approaches thereto by filling in Lamberton street and consequently raising the grade thereof in front of the property of McQuade.

The defendant insists that such changes and alterations of the grade in front of his premises are not authorized by the charter of the city of Trenton or by any law of the state, and that, consequently, he was justified in the resistance which he made and the threats indulged in. It is urged that, instead of these changes being so made as to carry off the water, they cause it to accumulate in front of McQuade's premises and to direct it into his cellar. It is also urged that, in case the pavement and curbing be reset according to the contemplated grade, the pavement will be raised so high as to materially intercept the passage of light and air to his cellar.

Because the railroad company is interested in these changes and took a large part in the work of completing them, it is insisted that the city is not really interested therein, and consequently had no authority to pass the ordinance under which the city authorities have pretended to act in relaying the pavement and resetting the curb in front of McQuade's house.

It is also claimed that if, in any event, the city had authority to enter into such an arrangement with the railroad company, the latter might proceed with the prosecution and completion of such improvements; it had no right to proceed until it first made compensation to McQuade for whatever damages he might sustain because of such changes, and consequently that he has the right forcibly to interfere and prevent the relaying of said sidewalk and the recurbing of the street until such compensation is duly made him.

Doubtless, the city authorities had a right to make the changes in the grade of the streets, curbs and sidewalks above mentioned. The fact that the streets had once been graded and the different elevations and depressions prescribed, did not exhaust the power of the city authorities, such power being a continuing one.

*McKevitt* v. *Hoboken, 16 Vr. 482; 2 Dill. Mun. Corp.* § *686; Smith* v. *Corporation of Washington, 20 How. (U. S.) 135; In re Furman, 17 Wend. 651; City of Delphi* v. *Evans, 36 Ind. 90.*

The city authorities have the power to determine the grade of the streets, and when properly exercised, such authority is exclusive or inherent in the municipal authorities to the exclusion of courts of justice. *2 Dill. Mun. Corp.* § *686.*

The defendant justifies his course and objects to any restraint, because neither the city nor the company, nor both, by mutual agreement had the right to proceed and make the proposed changes or improvements without first making compensation to him for the damages which he would sustain by such changes or improvements. It is claimed that, under the constitution, neither the city nor the company, nor both, had the right to impose any new burdens upon his land, as was done by raising the grade of the street in order to effect convenient access to the bridge over the railroad by means of ordinary approaches, without such compensation. In support of this view many authorities are cited. *Mettler* v. *Easton and Amboy Railroad Co., 10 C. E. Gr. 214; Morris and Essex Railroad Co.* v. *Hudson Tunnel Railroad Co., 10 C. E. Gr. 388; Redman* v. *Philadelphia, Marlton and Medford Railroad Co., 6 Stew. Eq. 165; Johnson* v. *Baltimore and New York Railway Co., 18 Stew. Eq. 460; Folley* v. *City of Passaic, 11 C. E. Gr. 216; Morris Canal and Banking Co.* v. *Jersey City, 11 C. E. Gr. 294; Jersey City* v. *Central Railroad Co., 13 Stew. Eq. 417.*

The general doctrine here invoked no one questions, but whether it is applicable at this stage of the proceedings, between these parties, admits of very grave doubt, in the sense in which the defendant desires that it shall be applied. The relative rights of these parties are to be determined by the situation in which they were with respect to each other at the time of the filing of this bill, and not in respect to the time in which the changes and improvements were begun. Parties may not lose any of their substantial rights of property or of action for damage thereto by delay, but they may lose the right to pursue remedies which they otherwise would enjoy under well-settled

43

provisions of the law. I think these remarks are controlling in this case. The defendant has, by his delay, forfeited his right to protection in interfering with the full completion of this work of change upon the part of the city, until he shall have been compensated for all the damages which he now alleges he has sustained because of all the other changes in the grade and elevation of the street which have been carried on to absolute completion, and which he says so results to his damage. He allowed all of this work so far to be finished without in any manner offering any opposition. *Rittenger* v. *Passaic, 16 Vr. 147; Youngster, pros.,* v. *Paterson, 11 Vr. 244.* Nothing remains to be done but making the sidewalk and curbing conform to the rest of the work, which is so complete. Under the law, his right of compensation for any damages which he may have sustained remains unimpaired. The seventy-first section of "An act concerning roads" expressly provides a remedy in such cases. *Vorrath* v. *Hoboken, 20 Vr. 285; Vanatta* v. *Morristown, 5 Vr. 445.* Since all of the changes in grades were determined upon by ordinance, and all completed accordingly, except the sidewalk and curbing in front of the defendant's dwelling, many months before the filing of the bill; and since he had ample notice of the beginning, progress and completion of such work, and availed himself of none of the legal remedies which the law affords him; and since, from the broken, irregular and bad condition of the sidewalk and curbing, pedestrians may be injured, and in consequence thereof the city may be liable to actions for damages; and since, according to the cases cited, the law seems to be so well settled as to the rights of the city and the citizens, I regard it my plain duty to advise a preliminary injunction, restraining the defendant not only from further interfering with the laying and completion of the sidewalk and curbing mentioned in the bill of complaint, but also from in any manner removing, disturbing or interfering with the said pavement, sidewalk or curbing after the same shall have been completed.